This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Joanie Keough, appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that adopted a magistrate's decision to terminate her parental rights to her two children and place them in the permanent custody of Summit County Children Services Board ("CSB"). We affirm.
Keough and her husband, Wallace, are the natural parents of two children, Nicole (born 11/28/96[1]) and Joseph (born 7/24/97). CSB first became involved with the family in September 1998, following an incident during which Wallace allegedly threatened to kill himself and his entire family. Wallace was arrested and incarcerated. The children were initially allowed to remain in the custody of Keough under an order of protective supervision. In addition to the domestic violence issue, CSB was concerned about the instability of family's housing. On August 4, 1999, CSB filed for temporary emergency custody of the children because it received notice that Keough and her family had been told to leave the homeless shelter where they had been living.
On September 22, 1999, based on the recommendation of the magistrate, the children were adjudicated dependent and placed in the temporary custody of CSB. At the same time, the trial court found that CSB had made reasonable efforts to prevent the removal of the children from the home. Keough filed no objections to the magistrate's decision, nor did she appeal from the adjudication of dependency and disposition of temporary custody.
On June 12, 2000, CSB moved for permanent custody of the children. On February 6, 2001, the permanent custody hearing was held before a magistrate. The magistrate recommended that the children be placed in the permanent custody of CSB. The trial court adopted the recommendation of the magistrate, subject to the filing of objections pursuant to Juv.R. 40. Keough filed timely objections, all of which were overruled by the trial court. Keough appeals and raises five assignments of error.
 ASSIGNMENT OF ERROR I The trial court erred in finding that it is in the minor [children's] best interest[s] that they be placed in the permanent custody of CSB as the prosecution failed to meet its burden of proof requiring clear and convincing evidence[.]
 ASSIGNMENT OF ERROR II The trial court erred in granting CSB's motion for permanent custody thereby terminating the parental rights of appellant Joanie Keough as the trial court's findings are against the manifest weight of the evidence which could only lead to one conclusion that being contrary to the judgment of the trial court[.]
 ASSIGNMENT OF ERROR III The trial court erred in granting CSB's motion for permanent custody as appellant Joanie Keough substantially complied with her case plan requirements and has remedied the initial conditions at issue in the case[.]
 ASSIGNMENT OF ERROR IV The trial court erred in granting CSB's motion for permanent custody as CSB did not use reasonable and diligent efforts to assist appellant Joanie Keough in her search for safe, stable and adequate housing in order to reunite this family[.]
We will address Keough's first four assignments of error together as that is how they were argued. Because the permanent custody motion was heard by a magistrate, Keough is permitted to raise on appeal only those arguments that she preserved for review pursuant to Juv.R. 40. Specifically, Juv.R. 40(E)(3)(b) provides that "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule."
Consequently, Keough is limited to the arguments she preserved through her objections to the magistrate's order: (1) that the magistrate erred in finding that permanent custody was in the children's best interests; (2) that the magistrate erred in finding that Keough failed to substantially remedy the conditions that caused the removal of the children from the home; (3) that CSB failed to make reasonable and diligent efforts to assist Keough in finding suitable housing; and (4) that the magistrate erred in denying Keough's motion for a continuance of the hearing. We will address her arguments out of order for ease of discussion.
A brief overview of the relevant statutory framework will facilitate our review of Keough's arguments. Termination of parental rights is an alternative of last resort, but is sanctioned when necessary for the welfare of a child. In re Wise (1994), 96 Ohio App.3d 619, 624. Before a juvenile court can terminate parental rights and award permanent custody of a child to the moving agency, it must find by clear and convincing evidence:
 (1) that one of four reasons enumerated in R.C. 2151.414(B)(1)(a)-(d) exists for not returning the child to either of his parents: (a) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, (b) the child is abandoned, (c) the child is orphaned and there are no relatives available to take the child, or (d) the child has been in the temporary custody of one or more children services agency for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; and
 (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1). See, also, In re William S. (1996), 75 Ohio St.3d 95, 97-98.
Among other things, Keough raises challenges to the trial court's findings on each of the two prongs of the permanent custody test.
 Failure to Substantially Remedy the Conditions Causing Removal
On the first prong of the test, the trial court found that two of the enumerated reasons existed: (1) the children could not be placed with either parent within a reasonable time or should not be placed with either parent and (2) that the children had been in the temporary custody of one or more children services agency for twelve or more months of the prior consecutive twenty-two month period. As indicated above, the first prong of the permanent custody test is satisfied by either of these two findings.
Keough challenges only one of these findings, however. She contends that the trial court erred by finding that she failed to substantially remedy the conditions causing the removal of the children and, consequently, erred in finding that the children could not or should not be placed with either parent. See R.C. 2151.414(E)(1). However, as indicated in the statutory framework above, "[t]he juvenile court [was] required to make an additional finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent only where the child has not been abandoned, orphaned or has not been in temporary custody for twelve or more months of a consecutive twenty-two month period." In re Fox (Sept. 27, 2000), Wayne App. Nos. 00CA0038, 00CA0039, 00CA0040, and 00CA0041, unreported, at 10-11, citing R.C. 2151.414(B)(1).
Therefore, even if the trial court erred in making such a finding, its decision can be supported by its finding that the children had been in the temporary custody of CSB for more than twelve of the prior twenty-two months. That finding is clearly supported by the record in this case. R.C. 2151.414(D) provides that "a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from the home."
The children apparently were removed from their mother on August 4, 1999[2] and were adjudicated dependent and placed in the temporary custody of CSB on September 22, 1999. Thus, for purposes of R.C.2151.414(D), they entered the temporary custody of CSB on September 22, 1999. They remained in the temporary custody of the agency throughout the period prior to the permanent custody hearing. At the time of the permanent custody hearing on February 6, 2001, the children had been in the temporary custody of CSB for more than sixteen consecutive months. Consequently, the trial court did not err in finding that the first prong of the permanent custody test was satisfied.
 Best Interests of the Children
When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must:
 [C]onsider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed * * * through the child's guardian ad litem[;]
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]
R.C. 2151.414(D)(1)-(4)[3].
Keough challenged the magistrate's determination that permanent custody was in the children's best interests. Her only challenge, however, was that the magistrate abused his discretion by so concluding because there was evidence that Keough visited her children regularly. Although it is true that the evidence established that she visited her children regularly, that evidence went to only a portion of one of the best interest factors. See R.C. 2151.414(D)(1). That same factor required the court to consider evidence that Keough had limited interaction with her children during those visits, that her interaction with them was sometimes inappropriate, and that the children exhibited no signs of separation anxiety when each visit concluded. There was also evidence that the children were placed together in the same foster home, that they had been living there for approximately one year, and that the foster parents were willing to adopt them. While living with this foster family, each of the children had been attending preschool and was overcoming problems with delayed speech.
There was also evidence on other best interest factors that supported the trial court's determination. As indicated above, the children had been in the temporary custody of CSB for more than sixteen months prior to the permanent custody hearing. For these young children, who were three and four years old at the time of the hearing, that period of time represented a significant portion of their lives. They had been living with the same foster family for the past year, had achieved some stability, and were making developmental progress.
There is nothing in the record to suggest that temporary custody continued for so long because Keough was making progress toward reunification with her children. See In re Smith (January 2, 2002), Summit App. No. 20711, unreported, at 10 (noting that a lengthy period of temporary custody should not necessarily be held against the parent without considering the reasons for it and the implications on the child). During that period of time, while Keough had complied with some of the goals of her case plan, she had not complied with them all. As was stressed by CSB at the hearing, she had not secured a place for her children to live. Keough had moved from place to place throughout her involvement with CSB. At the time of the hearing, she was living in the home of friends from church. Although her friends had expressed a willingness to continue to allow Keough to live there, Keough had not received their permission to have her children live there also. According to the guardian ad litem, Keough's friends had indicated that they were not willing to have Keough's children live in their home.
The guardian ad litem, who had visited with the children and their mother on numerous occasions, concluded that it was in the children's best interests to be placed in the permanent custody of CSB. Keough has failed to convince us that the trial court erred in adopting the magistrate's finding that permanent custody to CSB was in her children's best interests.
 Reasonable and Diligent Efforts by CSB
Keough suggests that CSB was required to prove, at the permanent custody hearing, that it had exerted reasonable and diligent efforts to reunify the family. Although R.C. 2151.414(E)(1) does refer to "reasonable case planning and diligent efforts by the agency[,]" it addresses those efforts within the context of the parent's failure to remedy the circumstances causing the child's removal from the home. "R.C. 2151.414(E)(1) places no duty on the agency to prove that it exerted reasonable and diligent efforts toward reunification." In reThompson (Jan. 10, 2001), Summit App. No 20201, unreported, at 12, citingIn re Moore (Dec. 15, 1999), Summit App. Nos. 19202 and 19217, unreported, at 24-25. Moreover, in this case, it was not even necessary for CSB to proceed under R.C. 2151.414(E) because the children had been in the temporary custody of CSB for more than twelve months. See R.C.2151.414(B)(1)(d).
As this court noted in In re Thompson, supra, at 12: "[I]t is R.C.2151.419 that requires the agency to prove to the trial court `at any hearing held pursuant to [the statutes providing for the child's removal from the home]' that it made reasonable efforts to prevent removal of the children and to work toward reunification." As in In re Thompson, the record in this case reveals that when the trial court adjudicated the children dependent and placed them in the temporary custody of CSB, it approved and adopted a finding by a magistrate that CSB made reasonable efforts to prevent the removal of the children from the home.
That prior order, dated September 22, 1999, was a final appealable order, but Keough failed to timely appeal that order. See In re Murray
(1990), 52 Ohio St.3d 155, syllabus; In re Thompson, supra, at 12. "Consequently, this Court is without jurisdiction to reach the issues disposed of at that time." In re Thompson, supra, at 12.
 Denial of Motion for Continuance
Because Keough's fourth argument is raised through her fifth assignment of error, which she argued separately, it will be addressed during this court's discussion of that assignment of error.
For the reasons stated above, the first, second, third, and fourth assignments of error are overruled.
 ASSIGNMENT OF ERROR V The trial court erred in denying appellant's motion * * * for a continuance to obtain the results of her mental health assessment[.]
Through her final assignment of error, Keough contends that the trial court erred by failing to overrule the magistrate's decision to deny her oral motion for a continuance of the permanent custody hearing. Keough requested the continuance so that she could obtain the results of a mental health assessment that was allegedly performed a few days before the hearing.
The decision whether to grant a request for a continuance of a permanent custody hearing lies within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. In re Zhang (1999), 135 Ohio App.3d 350, 354. An abuse of discretion is more than a mere error in judgment; it is a "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. OhioState Med. Bd. (1993), 66 Ohio St.3d 619, 621.
Citing State v. Unger (1981), 67 Ohio St.2d 65, 67, the Zhang court noted the competing interests that the trial court should consider:
 any potential prejudice to a defendant against the court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice, including the length of the delay requested, whether other continuances have been requested and received, the inconvenience to litigants, witnesses, opposing counsel and the court, whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived, whether the defendant contributed to the circumstance which gives rise to the request for a continuance, and other relevant factors, depending on the unique facts of each case.
Zhang, 135 Ohio App.3d at 354.
When Keough moved for a continuance, counsel for CSB and the guardianad litem each expressed their opposition to a continuance. As they stressed, the children had been in temporary custody already for over sixteen months. The record reveals that CSB had originally filed for permanent custody on June 12, 2000, but the hearing, originally set for October 3, 2000, was continued because Keough changed counsel.
Keough had already had a mental health assessment during September 2000, but apparently was not happy with the results. Keough wanted to, and apparently did, have another assessment performed. As counsel for CSB stressed, however, she waited several months to have the second assessment and could not justify delaying the proceedings any further. Moreover, because Keough made no proffer of what the second assessment would have revealed, this court cannot speculate as to any prejudice to Keough. Keough has failed to demonstrate an abuse of discretion by the trial court in overruling her objection on this issue. The fifth assignment of error is overruled.
Keough's five assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
BATCHELDER, P.J., BAIRD, J. CONCUR.
[1] Although the record contains two different dates of birth for Nicole, this date appears to be the correct one.
[2] CSB was granted emergency temporary custody on that day. It is unclear from the record if the children were actually removed that day.
[3] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case.